IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**BARBARA NUNNELLY, as Special Administratrix of the Estate of Rebha Dell Reid, deceased, and on behalf of the wrongful death beneficiaries of Rebha Dell Reid** **PLAINTIFF**

**v.** **Case No. 4:19-cv-00073-KGB**

**HIGHLANDS OF LITTLE ROCK WEST MARKHAM HOLDINGS, LLC, d/b/a Little Rock Post-Acute and Rehabilitation, *et al.*** **DEFENDANTS**

# ORDER

Plaintiff Barbara Nunnelly, as special administatrix of the Estate of Rebha Dell Reid, deceased, and on behalf of the wrongful death beneficiaries of Rebha Dell Reid ("Nunnelly"), commenced this wrongful death action under the Arkansas Medical Malpractice Act, Arkansas Code Annotated § 16-114-201 *et seq*., against Little Rock Post Acute and Rehabilitation, JS Highland Holdings, LLC, Skyline Services Group LLC, and Joseph Schwartz (collectively "Defendants")[1] bringing claims for: (1) medical negligence; (2) ordinary negligence; (3) violation of nursing home resident's rights;[2] (4) civil liability for felonious conduct of endangering or

[1] On August 25, 2026, the Court entered an Amended Opinion and Order, dismissing without prejudice defendants John and Jane Does A through Z (Dkt. No. 25).

[2] Nunnelly's claim for an alleged violation of the Arkansas Protection of Long-Term Care Facility Residents Act ("Resident's Rights Act"), Arkansas Code Annotated § 20-10-1201, is against only separate defendant Little Rock Post Acute and Rehabilitation. However, under Arkansas Law, a violation of the Resident's Rights Act is not a separate cause of action but, rather, evidence of negligence in a medical malpractice claim. *See Cauffiel v. Progressive Eldercare Servs.-Saline, Inc*., 635 S.W.3d 1, 13 (Ark. Ct. App. 2021) (citing Ark. Code Ann. § 20-10-1209(d)(1)-(2)). Because Nunnelly brings both a claim for medical negligence covered by the Medical Malpractice Act and a claim for violation of the Resident's Rights Act against separate defendant Little Rock Post Acute and Rehabilitation, the Court considers violations of the latter Act as evidence of negligence under the former Act.

neglecting an impaired adult; (5) breach of fiduciary duty; (6) deceptive trade practices; and (7) wrongful death (Dkt. No. 2, at 12–28). On March 26, 2026, the Court granted Nunnelly's motion for summary judgment and determined that Nunnelly has met her burden of proof for the medical malpractice claim as required by the Arkansas Medical Malpractice Act (Dkt. No. 23). On August 28, 2026, the Court issued an Amended Opinion and Order dismissing John and Jane Does A through Z (Dkt. No. 25). The Court directed Nunnelly either to request an evidentiary hearing on the issue of damages or present an affidavit or other proof that sets forth for the Court the evidentiary basis for the damages to which Nunnelly is entitled as a result of her claims (*Id.*). Nunnelly presented an affidavit setting forth the evidentiary basis for the damages to which Nunnelly contends she is entitled as a result of her claims (Dkt. No. 24). Defendants did not respond, and the time to do so has passed.

Nunnelly, as special administatrix of Reid's estate, requests the following in damages: (1) \$3,500,000.00 for Reid's conscious pain and suffering; (2) \$119,383.32 for Reid's medical expenses; (3) \$5,984.03 for Reid's funeral expenses; and (4) \$1,000,000.00 in loss of life damages for Reid's loss of life. On behalf of Reid's wrongful death beneficiaries, Nunnelly requests \$100,000.00 to each beneficiary for wrongful death damages, totaling \$300,000.00. Nunnelly also requests \$5,000,000.00 in punitive damages.

## I. Factual Background

The following facts are taken from the statement of undisputed facts filed in conjunction with Nunnelly's motion for summary judgment (Dkt. No. 21). As Defendants failed to respond to the motion for summary judgment, these facts are deemed admitted. *See* Local Rule 56.1(c) of the Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas ("All material facts set forth in the statement filed by the moving party pursuant to paragraph (a)

shall be deemed admitted unless controverted by the statement filed by the non-moving party under paragraph (b).”).

Reid, age 85, was a nursing home resident of Defendants and under Defendants’ care from August 15, 2016, to September 30, 2016 (Dkt. No. 21, ¶ 1). While in Defendants’ care Reid suffered a fall at Little Rock Post Acute and Rehabilitation on August 26, 2016, causing head and other injuries, pain, emotional distress, and death, among other harms and losses (*Id.*, ¶ 2). After much suffering, Reid died as a result of the injuries that she suffered from the fall on October 5, 2016 (*Id.*, ¶ 3). Defendants failed to provide the necessary care and services to ensure that Reid and residents with needs similar to her needs attained and maintained their highest practicable physical, mental, and psychosocial well-being (*Id.*, ¶ 4). Defendants failed to establish, publish, and adhere to policies and procedures to ensure that Reid and residents with needs similar to her needs attained and maintained their highest practicable physical, mental, and psychosocial well-being (*Id.*, ¶ 5). Defendants failed to provide the necessary care, services, observations, and assessments to ensure that Reid and residents with needs similar to her needs did not suffer from falls, unsanitary and poor hygiene, urinary tract infections, trauma, and other maladies, harms, losses, and injuries as set forth in the depositions taken in this action, and death (*Id.*, ¶ 6). Defendants failed to provide the necessary care and services to prevent Reid’s fall (*Id.*, ¶ 7). Defendants failed to provide the necessary care and services to prevent Reid from developing a pus infiltrated and foul-smelling urinary tract infection (*Id.*, ¶ 8). Defendants failed to provide the necessary care and services to ensure that Reid and residents with needs similar to her needs maintained good grooming and hygiene in order to prevent infections and were not left for medically unsafe periods lying in their own excrement (*Id.*, ¶ 9).

In a desire to maximize Defendants' profits, and with a conscious disregard to resident safety, Defendants failed to provide sufficient staff to provide nursing and related services to meet the total needs of Reid and residents with needs similar to her needs on a 24-hour, 7-day a week basis and in accordance with resident care plans (*Id.*, ¶ 10). Defendants failed to administer the nursing home facility in a manner that allowed adequate supervision of the nursing staff to prevent the failures and injures set forth herein and allow sufficient nursing staff observations, assessments, and examinations of the responses, symptoms, and progress in the physical condition of Reid and other residents with needs similar to her needs in order to attain and maintain the highest practicable physical, mental, and psychosocial well-being of each resident (*Id.*, ¶ 11).

Defendants failed to assess, evaluate, and supervise adequately the nursing staff to ensure that Reid and residents with needs similar to her needs received appropriate nursing care in accordance with the applicable standard of care and professional standards of quality, facility policy and procedures, and the rules and regulations of DHS and the United States Centers for Medicare and Medicaid Services ("CMS") (*Id.*, ¶ 12). Defendants failed to provide and assure an adequate, comprehensive, and accurate nursing care plan based on the needs and functional capacity of Reid that met her medical, nursing, mental, and psychosocial needs as identified in a comprehensive assessment (*Id.*, ¶ 13). Defendants failed to provide and assure an adequate, comprehensive, and accurate nursing care plan based on the needs and functional capacity of Reid with revisions and modifications as her needs changed (*Id.*, ¶ 14). Defendants failed to implement and assure that an adequate nursing care plan for Reid was followed by the nursing staff (*Id.*, ¶ 15).

Defendants failed to provide care and treatment for Reid in accordance with Reid's physician's orders and Reid's care plan (*Id.*, ¶ 16). Defendants failed to maintain clinical records

on Reid in accordance with accepted professional standards and practices that are complete, accurately documented, readily accessible, and systematically organized (*Id.*, ¶ 17). Defendants failed to notify and consult properly and timely Reid's physician and family regarding significant changes in her physical, mental, or psychosocial condition resulting in unnecessary pain and suffering to her (*Id.*, ¶ 18). Defendants failed to monitor adequately and appropriately Reid and recognize significant changes in her health status (*Id.*, ¶ 19). Defendants failed to keep Reid in a safe, sanitary, and comfortable environment (*Id.*, ¶ 20). Defendants failed to provide Reid with adequate and appropriate nursing care and treatments for her medical conditions resulting in the injuries set forth herein (*Id.*, ¶ 21). Defendants failed to screen, evaluate, and check references adequately, test for competence, orient, provide in-service training, and use ordinary care in selecting and retaining nursing staff to have sufficient staff for pertinent resident care needs and to maintain the safety of residents (*Id.*, ¶ 22).

Further, Defendants failed to terminate employees assigned to Reid who were known to be careless, incompetent, and unwilling to comply with the policy and procedures, applicable standard of care and professional standards of quality, and the rules and regulations promulgated by DHS and CMS (*Id.*, ¶ 23). Defendants failed to assign nursing staff duties consistent with their education, training, and experience based on Reid's medical history and condition and nursing and rehabilitative needs; the characteristics of the resident population residing in the area of the facility where Reid was a resident; and the nursing skills needed to provide care to such a resident population the failure to establish, publish, and adhere to policies for nursing staff concerning the care and treatment of residents with nursing, medical, and psychosocial needs similar to those of Reid (*Id.*, ¶ 24). Defendants failed to adopt adequate guidelines, policies, and procedures for investigating the relevant facts, underlying deficiencies, or licensure violations or penalties found

to exist by state and federal agencies; determining the cause of any such deficiencies, violations, or penalties; and the method and means for correcting deficiencies or licensure violations or penalties found to exist (*Id.*, ¶ 25).

As members of the governing body of the facility, Defendants failed to discharge their legal and lawful obligation by assuring that the rules and regulations designed to protect the health and safety of residents, such as Reid, as promulgated by DHS and CMS, as well as the standard of care, were consistently complied with on an on-going basis; assuring that the resident care policies were consistently complied with on an on-going basis; assuring that the policy and procedure manuals were updated and modified to address problems that arose at the facility; and responsibly assuring that appropriate corrective measures were implemented to correct problems concerning inadequate resident care (*Id.*, ¶ 26). Defendants failed to provide a safe, clean, sanitary, and comfortable environment that promotes maintenance or enhancement of each resident's quality of life and dignity and respect (*Id.*, ¶ 27). Defendants failed to provide Reid with the dignity and respect that all nursing home residents are entitled to receive, to provide her a dignified existence, and to keep her free from abuse and neglect (*Id.*, ¶ 28). Defendants failed to protect Reid's nursing home resident rights as provided by state and federal laws and the standard of care applicable to this case (*Id.*, ¶ 29). Defendants failed to comply with the requirements of the Arkansas Neglect of An Endangered or Impaired Adult Act (Ark. Code Ann. §§ 5- 28-103 (c)(1) *et. seq*. and 16-118-107), the rules and regulations promulgated by DHS, the Social Security Act (42 USC §§ 1395i-3 et. seq. and 1396r *et. seq*.), and the federal minimum standards imposed by CMS codified in the Code of Federal Regulations (*Id.*, ¶ 30).

At all relevant times mentioned herein, Defendants owned, operated, and controlled Little Rock Post Acute and Rehabilitation and the medical and nursing care of Reid at Little Rock Post

Acute and Rehabilitation (*Id.*, ¶ 31). Defendants' acts and omissions worked together with the acts and omissions of the other defendants as a proximate cause of the damages and injuries suffered by Reid (*Id.*, ¶ 32).

At all relevant times Defendants had: (1) an agreement, express or implied; (2) for the common purpose of operating Little Rock Post Acute and Rehabilitation; (3) with a community of pecuniary interest in that purpose; and (4) with an equal right to a voice in the direction and control of the operation of Little Rock Post Acute and Rehabilitation thereby imputing the conduct of each separate defendant to the other, jointly and severally, under doctrine of joint enterprise as defined by Arkansas Model Jury Instruction 712 and other applicable laws (*Id.*, ¶ 33). Defendants' training, expertise, and experience allowed Defendants to be able to anticipate and know that the lack of proper financial resources for the sufficient supervision, staffing, and supplying of Little Rock Post Acute and Rehabilitation would likely result in injuries to Reid (*Id.*, ¶ 34). Defendants failed to discharge their obligations of care to Reid with a reckless and conscious disregard for her rights and safety (*Id.*, ¶ 35).

At all times mentioned herein, Defendants had knowledge of, ratified, or otherwise authorized all of the acts and omissions that caused injuries to Reid (*Id.*, ¶ 36). Defendants knew that Little Rock Post Acute and Rehabilitation could not provide the minimum standard of care to the weak and vulnerable residents of the facility when Defendants admitted them but admitted them anyway to maximize their profits (*Id.*, ¶ 37).

As a direct result of Defendants actions, Reid suffered serious injuries, extreme pain and suffering, mental anguish, severe emotional distress and trauma, disability, degradation, loss of enjoyment of life, loss of quality of life and personal dignity, humiliation, fright, loss of life, death, medical, funeral, and related expenses (*Id.*, ¶ 38). The severity of Defendants recurrent negligence

inflicted upon Reid while under Defendants' care accelerated the deterioration of her health and physical condition beyond that caused by the normal aging process and resulted in the physical and emotional trauma including, without limitation: preventable falls; painful urinary tract infections; unnecessary trauma; and an untimely and premature death (*Id.*, ¶ 39).

On all occasions complained of herein, Reid was under Defendants' care, supervision, and treatment, and the injuries complained of herein were proximately caused by Defendants' acts and omissions (*Id.*, ¶ 40). Defendants have vicarious liability for the acts and omissions of all Defendants and other persons or entities under Defendants' control either directly or indirectly including their employees, agents, consultants, medical directors, and independent contractors, whether in-house or outside entities, individuals, agencies, or pools causing or contributing to the injuries of Reid (*Id.*, ¶ 41).

At all times relevant herein, Defendants operated and managed Little Rock Post Acute and Rehabilitation so as to maximize profits by reducing the staffing levels and supplies below that needed to provide care to residents that would comply with federal and state regulations, as well as the minimum standard of care, governing nursing home facilities in Arkansas (*Id.*, ¶ 42). Specifically, Defendants intentionally and with knowing and reckless disregard for the consequences of Defendants' actions caused staffing levels and supplies to be set at a level where the personnel on duty at any given time could not reasonably attend to the needs of their assigned residents, such as by way of example only, assisting with toileting, personal hygiene, feeding, and providing water to residents (*Id.*, ¶ 43). Defendants knowingly established staffing levels that created recklessly high nurse/resident ratios and that disregarded resident acuity levels as well as the minimal time required for such personnel to perform the essential functions of their job (*Id.*, ¶ 44). All of these acts of malfeasance directly caused injury to Reid and the other residents of the

facility, and were known to Defendants, and Defendants' corporate directors, officers, and administrators (*Id.*, ¶ 45).

Defendants' acts and omissions were motivated by a desire to increase the profitability of Little Rock Post Acute and Rehabilitation by reducing expenditures needed for staff, training, supervision, supplies, and care to levels that would predictably lead to severe injury and pain and suffering to Reid and other residents of the hospital facility (*Id.*, ¶ 46). Defendants do not have testimony from a qualified medical expert to support their denials of negligence in the complaint (*Id.*, ¶ 47). Defendants do not have testimony from a qualified medical expert willing to testify that Defendants met the applicable standard of care in Defendants' medical care and treatment of Reid (*Id.*, ¶ 48). Defendants do not have testimony from a qualified medical expert that there was not an act or omission on Defendants' part that was a proximate cause of injury or damage to Reid (*Id.*, ¶ 49). Defendants were negligent in and in connection with their care and treatment provided to Reid (*Id.*, ¶ 50). Defendants failed to meet the applicable standard of care in their medical care and treatment of Reid (*Id.*, ¶ 51). Defendants' acts or omissions were the proximate cause of injury or damage to Reid (*Id.*, ¶ 52). Defendants did not comply with the standard of care required of Defendants in the medical care and treatment Defendants provided to Reid (*Id.*, ¶ 53). Defendants are liable to Reid for damages in this case (*Id.*, ¶ 54). Defendants accept all liability in this case (*Id.*, ¶ 55).

**II. Legal Standard**

As a federal court sitting in diversity, the Court applies the "'substantive law of the forum state.'" *Olmstead Medical Center v. Continental Casualty Co.*, 65 F.4th 1005, 1008 (8th Cir. 2023) (quoting *Chew v. Am. Greetings Corp.*, 754 F.3d 632, 635 (8th Cir. 2014)). "When applying the substantive law of the forum state, we must follow decisions of the state's supreme court

interpreting the forum's law." *Olmstead*, 65 F.4th at 1008. Accordingly, the Court applies Arkansas law to determine what damages are appropriate.

Pursuant to Arkansas Code Annotated § 16-62-102(a)(1):

> Whenever the death of a person . . . is caused by a wrongful act, neglect, or default and the act, neglect, or default would have entitled the party injured to maintain an action and recover damages in respect thereof if death had not ensued, then and in every such case, the person or company or corporation that would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person . . . .

Ark. Code. Ann. § 16-62-102(a)(1). "In addition to all other elements of damages provided by law, a decedent's estate may recover for the decedent's loss of life as an independent element of damages." Ark. Code Ann. § 16-62-101(a)(2).

Nunnelly's claims arise under the Arkansas Medical Malpractice Act ("Malpractice Act"), Arkansas Code Annotated § 16-114-201–13 (*see* Dkt. No. 23 (finding that Reid's claims are governed by the Malpractice Act")). Arkansas Code Annotated § 16-114-208 governs damages for medical malpractice, and it permits a plaintiff to recover "for actual economic losses recognized by law suffered by the injured person by reason of medical injury, including, but not limited to, the cost of reasonable and necessary medical services, rehabilitation services, custodial care, loss of services, and loss of earnings or earning capacity." Ark. Code. Ann. § 16-114-208(a)(1). Additionally, "damages awarded may include compensation for pain and suffering and other noneconomic loss recognized by law." Ark. Code Ann. § 16-114-208(a)(2).

Moreover, the "surviving spouse, children, father, mother, brothers, and sisters of the deceased person" may recover as wrongful death beneficiaries. Ark. Code. Ann. § 16-62-102(d)(1). The Court "may fix such damages as will be fair and just compensation for pecuniary injuries, including a spouse's loss of the services and companionship of a deceased spouse and any mental anguish resulting from the death to the surviving spouse and beneficiaries of the deceased."

Ark. Code Ann. § 16-62-102(f)(1). A beneficiary's mental anguish is recoverable and includes "grief normally associated with the loss of a loved one." Ark. Code Ann. § 16-62-102(f)(2).

Additionally, "punitive damages are recoverable" in wrongful death actions. *Vickery v. Ballentine*, 732 S.W.2d 160, 162 (Ark. 1987). Pursuant to Arkansas Code Annotated § 16-55-206:

> In order to recover punitive damages from a defendant, a plaintiff has the burden of proving that the defendant is liable for compensatory damages and that either or both of the following aggravating factors were present and related to the injury for which compensatory damages were awarded:
>
> > (1) The defendant knew or ought to have known, in light of the surrounding circumstances, that his or her conduct would naturally and probably result in injury or damage and that he or she continued the conduct with malice or in reckless disregard of the consequences, from which malice may be inferred; or
> >
> > (2) The defendant intentionally pursued a course of conduct for the purpose of causing injury or damage.

Ark. Code. Ann. § 16-55-206.

## III. Reid's Estate's Damages

Nunnelly, on behalf of Reid's estate, requests: (1) $3,500,000.00 for Reid's conscious pain and suffering; (2) $119,383.32 for Reid's medical expenses; (3) $5,984.03 for Reid's funeral expenses; and (4) $1,000,000.00 in loss of life damages for Reid's loss of life. For the following reasons, the Court awards $1,000,000.00 for pain and suffering, $119,383.32 for medical expenses, and $5,984.03 for funeral expenses. The Court declines to award loss of life damages.

### A. Conscious Pain And Suffering

The administatrix of an estate may seek damages for the conscious pain and suffering of the deceased prior to their death. *New Prospect Drilling, Co. v. First Commercial Trust, N.A.*, 966 S.W.2d 233, 240 (Ark. 1998); *see* Ark. Model Jury Instr., Civil AMI 2216. The Eighth Circuit explains that "'[t]here is no precise or exact measuring stick for calculating general damages for

pain and suffering.'" *Gonzalez v. United States*, 681 F.3d 949, 952 (8th Cir. 2012) (quoting *Taken Alive v. Litzau*, 551 F.2d 196, 198 (8th Cir.1977)).

The Arkansas Supreme Court explained:

> One treatise on damages has described the jury's dilemma inherent in any pain-and-suffering evaluation:
>
> > Pain and suffering have no market price. They are not capable of being exactly and accurately determined, and there is no fixed rule or standard whereby damages for them can be measured. Hence, the amount of damages to be awarded for them must be left to the judgment of the jury, subject only to correction by the courts for abuse and passionate exercise. One of the most difficult decisions facing the jury in a personal injury case is the size of the monetary award for pain and suffering, since there is no objective method of evaluating such damages. The question in any given case is not what sum of money would be sufficient to induce a person to undergo voluntarily the pain and suffering for which recovery is sought or what it would cost to hire someone to undergo such suffering, but what, under all the circumstances, should be allowed the plaintiff in addition to the other items of damage to which he or she is entitled, in reasonable consideration of the pain and suffering necessarily endured or to be endured. The amount allowed must be fair and reasonable, free from sentimental or fanciful standards, and based upon the facts disclosed.

*Advocat, Inc. v. Sauer*, 111 S.W.3d 346, 355–56 (Ark. 2003) (quoting 2 *Stein on Personal Injury Damages*, § 8:8, at 8–19 (3d ed.1997) (footnotes omitted)) (citing *Howard Brill, Arkansas Law of Damages*, § 29–2, pp. 551–52 (4th ed.2002)).

After careful consideration of the factual record before the Court, the Court finds pain and suffering damages in the amount of $1,000,000.00. As a result of Defendants' negligence, Reid fell on August 26, 2016, causing her head and other injuries. As a result of Defendants' negligence, Reid also suffered from a pus infiltrated and foul-smelling urinary tract infection. The fall and infections caused Reid's death on October 5, 2016. Defendants also failed to keep Reid in a safe, clean, and sanitary environment while she was in Defendants' care. Considering all of these factors, the Court finds that $1,000,000.00 in pain and suffering damages is appropriate. *See also*

*Rack v. Schwartz*, Case No. 4:20-cv-135-BRW (E.D. Ark. Dec. 27, 2021) (Dkt. No. 69) *approved and adopted in full* by (Dkt. No. 70) (awarding $3,500,000.00 in pain and suffering damages against Schwartz for injuries sustained at nursing home taking place over two months on a factual record containing extensive factual details regarding the plaintiff's pain and suffering).

**B. Medical Expenses**

Nunnelly represents that Reid incurred $119,383.32 in medical expenses (Dkt. No. 24, ¶ 4, B). Nunnelly attaches as exhibits Reid's medical expenses from Highlands of Little Rock at Midtown Therapy and Living Center, billing records from St. Vincent Infirmary Medical Center, and bill records for inpatient hospice from Arkansas Hospice Health Information Management (Dkt. No. 24-2).

A "'plaintiff who seeks to recover medical expenses must prove the expenses are reasonable and necessary.'" *Young v. Barbera*, 233 S.W.3d 651, 655 (Ark. 2006) (quoting *Ponder v. Cartmell*, 784 S.W.2d 758, 761 (Ark. 1990)). "'Necessary' means causally related to the tortfeasor's negligence." *Young*, 233 S.W.3d at 655 (quoting *Ponder*, 784 S.W.2d at 761). "If a plaintiff proves that her need to seek medical care was precipitated by the tortfeasor's negligence, then the expenses for the care she receives, whether or not the care is medically necessary, are recoverable." *Young*, 233 S.W.3d at 655 (quoting *Ponder*, 784 S.W.2d at 761).

Defendants admit that, as a direct result of their actions, Reid had to incur medical expenses (Dkt. No. 21, ¶ 38). Defendants' admissions prove that Reid's medical expenses were precipitated by Defendants' conduct and are therefore recoverable. After careful review of the submitted medical expense bills, the Court awards Nunnelly, as special administatrix of Reid, $119,383.32 in medical expenses.

### C. Funeral Expenses

Nunnelly represents that Reid's estate incurred $5,984.03 in funeral expenses (Dkt. Nos. 23, ¶ 4, C; 23-3). It is well established that in a survival action, the estate "may recover damages for things such as . . . funeral expenses." *Matter of Estate of Shockley*, 634 S.W.3d 787, 790 (Ark. App. 2021) (citing *Durham v. Marberry*, 156 S.W.3d 242 (Ark. 2004)).

The Court has reviewed the funeral expenses associated with Reid's funeral and awards $5,989.03 for funeral expenses.

### D. Loss Of Life

Pursuant to Arkansas Code Annotated § 16-62-101(a)(2), "a decedent's estate may recover for the decedent's loss of life as an independent element of damages." Ark. Code Ann. § 16-62-101(a)(2). "Loss-of-life damages seek to compensate a decedent for the loss of the value that the decedent would have placed on his or her own life." *Durham v. Marberry*, 156 S.W.3d 242, 248 (Ark. 2004). "An estate seeking loss of life damages 'must present some evidence, that the decedent valued his or her life, from which a jury could infer and derive that value and on which it could base an award of damages.'" *Steele v. Sharkey Transportation Inc.*, Case No. 3:21-cv-64-DPM-PSH 2022 WL 17552999 at *2 (E.D. Ark. Dec. 9, 2022) (quoting *One Nat. Bank v. Pope*, 272 S.W.3d 98, 102 (Ark. 2008)). "[M]ere proof of life and then death" is insufficient. *One Nat. Bank*, 272 S.W.3d at 102–03.

Nunnelly's statement of undisputed facts and affidavit in support of damages do not present any evidence that Reid values her life such that a jury could infer and derive a value upon which an award of damages could be based. The Court has no proof regarding Reid's enjoyment of life, relationships, routines, and activities prior to her injuries (*See* Dkt. Nos. 18; 19; 24, ¶ 4, D).

Without any proof regarding loss of life damages, the Court declines on the record before it to award loss of life damages.

**IV. Beneficiaries Damages**

A "surviving spouse, children, father, mother, brothers, and sisters of the deceased person" may recover as wrongful death beneficiaries. Ark. Code. Ann. § 16-62-102(d)(1). The Court "may fix such damages as will be fair and just compensation for pecuniary injuries, including a spouse's loss of the services and companionship of a deceased spouse and any mental anguish resulting from the death to the surviving spouse and beneficiaries of the deceased." Ark. Code Ann. § 16-62-102(f)(1). A beneficiary's mental anguish is recoverable and includes "grief normally associated with the loss of a loved one." Ark. Code Ann. § 16-62-102(f)(2).

Barbara Nunnelly, Ralph Reid, and Sandra Snider each request $100,000.00 in wrongful death damages. Nunnelly's affidavit represents that Nunnelly, Ralph Reid, and Snider are Reid's children (Dkt. No. 24, ¶ 4, E). As Reid's children, they are entitled to recover as wrongful death beneficiaries.

There is no standard by which to evaluate the monetary value of "grief normally associated with the loss of a loved one." Ark. Code Ann. § 16-62-102(f)(2). Although there is no formula, the Arkansas Supreme Court, applying a previous version of a wrongful death beneficiary statute, directed consideration of the following factors:

> (1) The duration and intimacy of the relationship and the ties of affection between decedent and survivor.
> (2) Frequency of association and communication between an adult decedent and an adult survivor.
> (3) The attitude of the decedent toward the survivor, and of the survivor toward the decedent.
> (4) The duration and intensity of the sorrow and grief.
> (5) Maturity or immaturity of survivor.
> (6) The violence and suddenness of the death.
> (7) Sleeplessness or troubled sleep over an extended period.

(8) Obvious extreme or unusual nervous reaction to the death.
(9) Crying spells over an extended period of time.
(10) Adverse effect on survivor's work or school.
(11) Change of personality of the survivor.
(12) Loss of weight by survivor and other physical symptoms.
(13) Age and life expectancy of the decedent.

*Martin v. Rieger*, 711 S.W.2d 776 (Ark. 1986) (citing *St. Louis S.W. Ry. Co. v. Pennington*, 261 553 S.W.2d 436 (Ark. 1977)).

In *Rack*, Magistrate Judge Kearney, on the record before him, determined that $100,000.00 in wrongful death damages to each of Rack's siblings was appropriate. Case No. 4:20-cv-135-BRW (E.D. Ark. Dec. 27, 2021) (Dkt. No. 69) *approved and adopted in full* by (Dkt. No. 70). On the record in *Rack*, the decedent was 52 years old and was not a typical nursing home resident (*Id.*). Additionally, the record in *Rack* demonstrated that Rack's siblings watched each step of their sister's deterioration and ultimate death due to preventable injuries caused by Schwartz's negligence and that the siblings attempted to get their sister proper care (*Id.*).

Considering all of the factors identified by the Arkansas Supreme Court, the Court's prior explanation of damages in *Rack*, and the totality of circumstances on the record before the Court, the Court determines that each wrongful death beneficiary should be awarded $25,000.00. The Court has carefully considered the proof before it and determines that Nunnelly, Ralph Reid, and Snider's loss is serious and that the grief they suffer substantial.

The Court in no way intends to minimize the nature of Nunnelly, Ralph Reid, or Snider's grief nor the admitted wrongfulness of defendants' conduct. However, the record before the Court counsels against a large award like that in *Rack*. While the devastation of an early death is never without grief, Reid was 85 years old when she was a resident at defendants' nursing home. Reid's age is meaningful for determining how to compensate a wrongful death beneficiary because Reid was "a typical nursing home resident nearing the end of her long-lived life." (*Id.*, at 18).

Accordingly, on the record before the Court, the Court determines that Nunnelly, Ralph Reid, and Snider are awarded $25,000.00 each as wrongful death beneficiaries for their mental anguish.

**V. Punitive Damages**

The Arkansas Supreme Court explains that "punitive damages [are] justified only where the evidence indicates that the defendant acted wantonly in causing the injury or with such a conscious indifference to the consequences that malice may be inferred." *Bayer CropScience LP v. Schafer*, 385 S.W.3d 922, 935 (Ark. 2011). "'It is not necessary to prove that the defendant deliberately intended to injure the plaintiff. It is enough if it is shown that, indifferent to consequences, the defendant intentionally acted in such a way that the natural and probable consequence of his act was injury to the plaintiff.'" *Id.* (quoting *National By-Products, Inc. v. Searcy Housing Moving Co.*, 731 S.W.2d 194, 195–96 (Ark. 1987)); *see* Ark. Code. Ann. § 16-55-206. Factors to consider in the assessment of punitive damages include whether the amount is sufficient to constitute a penalty, deter similar conduct on the part of the same tortfeasor, and deter similar conduct by others. *Matthews v. Rodgers*, 651 S.W.2d 453 (Ark. 1983). "The amount of actual damages sustained by a plaintiff is but one criterion for the assessment of punitive damages." *Id.* "Evidence of the defendant's financial wealth is a proper element to be considered in the computation of punitive damages." *Id.*

The record before the Court establishes that not only was Defendants' conduct negligent, but that Defendants intentionally acted in such a way that the natural and probable consequence of their conduct was to injure Reid. Moreover, the record before the Court establishes that Defendants' conduct was done out of a desire to maximize profits, including by reducing staffing levels and supplies below the level required to provide sufficient care. The Court finds that punitive damages are appropriate given Defendants' conduct.

On the record before the Court, and considering factors including punishment and deterrence, the Court determines that a punitive damages award of $2,000,000.00 is appropriate. The Court finds that $2,000,000.00 in punitive damages, in addition to other damages in this case, protect the public interest, punish Defendants for their gross misconduct, and should hopefully deter Defendants and other nursing home operators from engaging in similar conduct in the future.

**VI. Conclusion**

For the following reasons, as against Defendants, the Court awards Reid's estate $1,000,000.00 for pain and suffering, $119,383.32 for medical expenses, and $5,984.03 for funeral expenses. The Court awards to Nunnelly, Ralph Reid, and Snider $25,000.00 each as wrongful death beneficiaries for their mental anguish. Additionally, the Court awards punitive damages of $2,000,000.00. In sum, the Court awards total damages in the amount of $3,200,367.35.

It is so ordered this 28th day of August, 2026.

Kristine G. Baker
Chief United States District Judge